GAUDIN, Judge.
Appellant is Purolator Armored, Inc., whose armored car was transporting funds belonging to the Gulf South Bank and Trust Company when the bank’s money bags were stolen by a Purolator guard who had been riding in the rear of the vehicle.
The bank filed suit in the Twenty-Fourth Judicial District Court and on May 12,1981, obtained a judgment for $150,000.00, the amount of its loss.
Purolator, on appeal, contends primarily that its liability was limited to $80,000.00 by a contract entered into between it and the bank. Also, appellant argues that the trial judge erred in his denial of Purolator’s Motion to Re-open the Evidence, filed after judgment was rendered.
We do not agree with either contention.
THE CONTRACT
The pertinent segments of the contract between Purolator and the bank are as follows:
“Purolator agrees to call for and receive from the customer ... sealed or locked shipments containing currency ... and to transport and deliver same in like condition, to the consignee designated by customs, between points in, and in accordance with, the following service and compensation schedule, the charges in which are based the liability assumed by Purolator pursuant to paragraph 5 hereof... “The sole liability of Purolator, in the event of loss from whatever cause, except as hereinafter further limited, shall be payment to the customer of the declared value as appears in the shipping document, which sum shall not exceed the maximum amount set forth in the schedule on page 1 of the contract for the designated shipment.”
The contract states that the carrier’s maximum liability regarding deliveries to the Navy Support Office and the Port of Embarkation is $40,000.00 for each shipment. Specific charges were set for these amounts.
The contract, automatically renewable every 30 days, does not contain a schedule of rates — i.e., a tariff — nor is there any specific language limiting the carrier’s liability to the contracted-for amount in event of a loss occasioned by the carrier's negligence.
FACTS OF THE LOSS
On July 26, 1979, the bank delivered $150,000.00 to a Purolator armored car for delivery to the Navy Support Office and the Port of Embarkation. The armored car was manned by a driver and by an armed guard, William McNabb, who rode in the rear of the vehicle along with the funds being transported.
While en route, the armored car stopped for a traffic signal, whereupon McNabb opened the rear door and fled with the money. McNabb and an accomplice were *963 later arrested and convicted of the theft, but the stolen funds were not recovered.
PUROLATOR’S NEGLIGENCE
Purolator does not strenuously contend that it was not negligent in the hiring of McNabb.
Actually, McNabb applied for the position of armored car guard under a false name, William Evans. He was hired by a branch manager following an interview, a physical examination and a polygraph test. Purolator did not attempt to verify the information contained in the job application, which included a fake social security number, fictitious personal references and false data regarding McNabb’s alleged 12-year military record and former job as manager of Martin’s Mobil service station in Hammond, Louisiana.
Purolator stipulated that had it known of .the falsehoods in the job application, McNabb would not have been hired. McNabb began his employment only three days before the theft occurred.
The trial judge said:
“It is clear to the Court that if Purolator had exercised due care and reasonableness in the handling of McNabb’s job application by even the most cursory investigation of the personal and employment data listed, the falsehoods would have been discovered, McNabb would not have been hired and the theft would not have occurred. Thus, but for Purolator’s negligence, the Bank would have suffered no loss whatsoever.”
LSA-R.S. 10:7-309
In spite of its slipshod and negligent hiring procedure, Purolator contends that LSA-R.S. 10:7-309 allows it to limit its liability via the contract between it and the bank.
The statute reads:
7-309. Duty of Care; Contractual Limitation of Carrier’s Liability
(1)A carrier who issues a bill of lading whether negotiable or non-negotiable must exercise the degree of care in relation to the goods which a reasonably careful man would exercise under like circumstances. This subsection does not repeal or change any law or rule of law which imposes liability upon a common carrier for damages not caused by its negligence.
(2) Damages may be limited by a provision that the carrier’s liability shall not exceed a value stated in the document if the carrier’s rates are dependent upon value and the consignor by the carrier’s tariff is afforded an opportunity to declare a higher value or a value as lawfully provided in the tariff, or where no tariff is filed he is otherwise advised of such opportunity; but no such limitation is effective with respect to the carrier’s liability for conversion to its own use.
(3) Reasonable provisions as to the time and manner of presenting claims and instituting actions based on the shipment may be included in a bill of lading or tariff.
The bank, in its brief, finds fault with the statute as it appears to “... sweep away years of case law concerning the liability of carriers for their own negligence ...” and “... upset the long-established statutory and jurisprudential rules imposing strict liability on carriers for hire...”
Does the statute permit a negligent carrier to limit its liability by the terms and conditions of a contract? Section (2) does not specifically say one way or the other, although in cases of the carrier’s “... conversion for its own use ... ”, the legislative intent is clear: “... no such limitation is effective ...”
If the legislature meant by this statute to allow a carrier to limit its liability in cases of the carrier’s negligence, it follows that Section (2) must be narrowly construed. It also follows, as LSA-R.S. 10:1-106 dictates, that remedies should be liberally administered by the courts.
Regardless, the trial judge found that Purolator had not complied with Section (2), and the record supports this conclusion. As a tariff was not attached to or part of the contract or otherwise published, *964 Purolator had to show that the bank “. .. was advised ... ” of its “... opportunity to declare a higher value...”
Purolator cannot meet his affirmative duty by contending that the bank, by using common sense, must have realized that its insurance could be increased merely by making a phone call to Purolator and then paying an increased rate. Nor can Purolator rely on the likelihood that when the original contract was entered into, the bank could have declared a higher value on its shipments to the Navy Support Office and the Port of Embarkation.
From the trial court’s “Reasons for Judgment”:
“While the Court feels Purolator’s limitation of liability would be effective had Purolator complied with the provisions of the above-quoted statute, such is not the case. Subsection (2) clearly states that damages may be limited only when the consignor is afforded an opportunity to declare a higher value or a value as lawfully provided in the tariff, or when no tariff is filed, he is otherwise advised of such opportunity. The statute thus places the burden on the carrier to inform the consignor of an opportunity to increase the limitation of liability provision. “Nothing in the contract itself (stipulation A) informs the consignor of such an opportunity. Further, Mr. John W. Gray, Jr., Branch Manager of Purolator in New Orleans, stated on page 49 of his deposition that neither he nor anyone working in his office ever, at anytime, contacted the bank and advised them of an opportunity to increase their limits.
“The Court thus holds that Purolator’s attempts to limit its liability were ineffective because of failure to comply with the provisions of R.S. 10:7-309, and feels this holding is in conjunction with the spirit of the Title, set forth generally in R.S. 10:1-106: ‘The remedies provided by the title shall be liberally administered to the end that the aggrieved party may be put in as good position as if the other party had fully performed.’ ”
The trial judge obviously felt that Puro-lator, despite its negligence, could have limited its liability by complying with Section (2) of 7-309, but that the carrier had not complied. To the extent that the trial judge found non-compliance, we agree with his “Reasons.”
Accordingly, Purolator is responsible for the entire amount of the loss. If 7-309 does not allow limitation of responsibility when the carrier is negligent, strict liability must be imposed. See LSA-C.C. arts. 2751, 2754 and 2937-2957; and Avant v. A-1 Moving & Storage Company, 260 So.2d 355 (La.App. 4th Cir.1972).
If, on the other hand, Section (2) of 7-309 authorizes limitation of responsibility by a negligent carrier, Purolator cannot avail itself of this relief as statutory needs were not met.
We note that the trial judge was not required to determine precisely what Puro-lator (or any carrier) must do in order to meet its affirmative statutory duty. After first concluding that Section (2) could be applicable, he had only to decide whether, under the instant facts and circumstances, Purolator did or did not legally comply.
MOTION TO RE-OPEN
Following judgment, Purolator moved to re-open the evidence to allow it to prove that the bank in fact had the opportunity to declare a higher amount. Because the motion did not specify which new evidence, if any, could or would be produced, the trial judge did not abuse his discretion in denying the request.
Unless manifestly erroneous, a trial judge’s ruling on such a motion will not be disturbed on appeal. See Rawls v. Demare, 377 So.2d 1376 (La.App. 4th Cir.1979).
CONCLUSION
While we do not, for reasons stated heretofore, decide whether Section (2) of LSA-R.S. 10:7-309 permits a negligent carrier to limit its financial responsibility by contract between it and the shipper if statutory requirements are met, we do affirm the trial *965 judge’s judgment in favor of the Gulf South Bank and Trust Company and against Purolator Armored, Inc., in the amount of $150,000.00, plus legal interest from date of judicial demand, until paid, and all costs.
AFFIRMED.